**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIM. NO. 1:21-mj-1907 TMD |
| | * | |
| ANTHONY PAULO MILLIKEN, | * | FILED UNDER SEAL |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | * | |
| | * | |
| Defendants. | * | |

*******
**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, George Vigue, Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), being duly sworn, hereby state as follows:

## BACKGROUND

1. I submit this affidavit in support of a Criminal Complaint charging Anthony Paulo MILLIKEN ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. § 846.

2. I am a Task Force Officer with the DEA and have been since September of 2003. I have been a duly sworn member of the Baltimore Police Department since 1995. I have received training at the Baltimore Police Academy in criminal law, probable cause, search and seizure, the use of informants, surveillance methods, and the constitutional rights of citizens. I have attended yearly in-service training, which has satisfied the requirements of the Maryland Police Training Commission. I am currently assigned to a DEA Task Force that focuses on the interdiction of drug couriers using the highways, commercial bus lines, passenger train lines, common parcel carriers, the U.S. postal system and commercial airline services.

3. During my tenure as a Baltimore Police Officer, I have gained considerable knowledge and experience in the field of drug trafficking. I have completed numerous seminars, including seminars sponsored by the Baltimore Police Department, the DEA, the Maryland State Police, and the Baltimore City State's Attorney's Office, centered on drug trafficking and investigation. I have also attended a three-day seminar sponsored by the DEA that focused on internet drug investigations. The program covered both the technical and legal aspects of gathering information through open-source and investigative databases on the use of various internet, voice over internet protocols ("VOIP"), instant messaging ("IM"), virtual chat rooms and email services available to drug traffickers. The training gave examples of recent investigations where drug traffickers abandoned traditional communications methods (e.g., telephonic communication, Push-to-Talk Technology, etc.) in favor of internet-based communication in an attempt to thwart law enforcement's efforts. The training focused on the increasing use of such mediums by drug traffickers, and presented current and developing technical methods that can be utilized by investigators to obtain information through the use of subpoenas, search

1

and seizure warrants, and internet full-pipe eavesdropping orders that adhere to electronic communications intercept laws and guidelines.

4. Through my training and experience in narcotics trafficking investigations, I am familiar with the actions, traits, habits, and terminology utilized by narcotics traffickers. I am familiar with the ways in which drug traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the use of cellular telephones and the internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct narcotics transactions.

5. I have personally participated in hundreds of arrests of individuals suspected of involvement in drug trafficking. I have been the affiant on hundreds of affidavits in support of criminal charges, search and seizure warrants, and other court orders pertaining to drug trafficking investigations.

6. I submit this affidavit for the limited purpose of establishing probable cause to support the issuance of a Criminal Complaint charging Anthony Paulo MILLIKEN with Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. § 846.

7. Because I submit this affidavit for the limited purpose of establishing probable cause to support the issuance of a Criminal Complaint, it only contains a summary of relevant facts. I have not included each and every fact known to me concerning the entities, individuals, and the events described in this affidavit.

## PROBABLE CAUSE

### Overview

8. Since July 2019, members of the Baltimore County Police Department and the DEA have been conducting an investigation into the drug trafficking activities of Steven Norwood.

9. On February 10, 2020, the Honorable Keith R. Truffer of the Circuit Court of Maryland for Baltimore County, signed orders authorizing the interception of Norwood's wire and electronic communications. The wiretap investigation continued for approximately five months thereafter, culminating in a series of search warrants, described below.

10. During the course of the investigation, investigators identified that Norwood was meeting with drug and money couriers who traveled to the Baltimore area from outside of Maryland to either deliver drugs or pick up sums of money.

11. Two of the drugs couriers were identified as Nicholas Mamea—who is currently charged with Norwood in Criminal Case No. SAG-21-131 (D. Md.)—and Anthony Paulo MILLIKEN. During the course of the investigation, investigators identified at least six trips made by Mamea or MILLIKEN, who both reside in the San Jose, California area, to the Baltimore, Maryland area. During those trips, Mamea and MILLIKEN would meet directly with Norwood or his associates, including at Norwood's "stash" location, an apartment located at 10201 Grand

Central Avenue, Owings Mills, Maryland (the "Grand Central Apartment"). During the final one of these trips, in which Mamea flew out to Baltimore, investigators executed a search warrant at the Grand Central Apartment, where they found Norwood, Mamea, approximately 14 kilograms of cocaine, over 900 grams of fentanyl, several pounds of marijuana, over $360,000 cash, a Taurus 9mm pistol, a money counter and other indicia of drug trafficking, and a Southwest Airlines boarding pass in MILLIKEN's name.

## The Norwood Drug Conspiracy

12. In the fall of 2019, prior to the initiation of the wiretap investigation, investigators had identified the Grand Central Apartment as a likely stash location used by Norwood and his criminal associates. To further their investigation, investigators emplaced a concealed camera in the hallway outside of the Grand Central Apartment, which was pointed at the apartment.

13. On November 6, 2019, MILLKEN flew from San Francisco to Baltimore, Maryland. On the morning of November 7, the covert camera installed outside of the Grand Central Apartment captured Norwood and MILLIKEN entering the stash apartment with two suitcases and a backpack. About 90 minutes later, the video captured MILLIKEN leaving the stash apartment by himself with two suitcases. Norwood left the stash location by himself shortly thereafter with a backpack. That same day, November 7, there was a room booked at an Owings Mills hotel ("Hotel A") in Norwood's name. Investigators later identified Hotel A as the primary hotel that the couriers would stay at during their trips to the Baltimore area.

14. On November 24, 2019, MILLIKEN again flew from San Francisco to Baltimore. At around 7 PM that evening, the covert camera aimed at the stash apartment captured Norwood and MILLIKEN entering the apartment. Norwood and MILLIKEN wheeled two suitcases and a backpack/small suitcase into the apartment. Approximately one minute later, MILLIKEN and Norwood left the apartment, with MILLIKEN rolling a single suitcase.

15. On February 6, 2020, shortly before 7 PM, the covert camera captured Norwood and Mamea entering the stash location with two suitcases and a backpack. At about 7 PM, Norwood left the apartment with a full grey backpack. At approximately 10:41 PM, Norwood returned with a full grey backpack. At approximately 10:48 PM, Norwood left the apartment with a brown box and a white bag. On February 7, 2020, at 2:13 AM, Norwood returned. At 2:20 AM, Norwood and Mamea left the apartment briefly, and returned with a backpack and a package shaped like a money counter. At approximately 3:52 AM, Norwood and Mamea left with two suitcases.

16. On March 9, 2020, MILLIKEN flew from San Francisco to Washingto̶n̶ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ MILLIKEN arrived at the hotel with several pieces of luggage; MILLIKEN took the elevator to the se▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Later that evening, Norwood traveled from his primary residence to the Grand Central Apartment, where he entered with no bags. He left the stash apartment shortly thereafter with a backpack. Norwood then traveled

to Hotel A. Norwood and another associate entered the hotel and made their way to the second floor, wheeling/carrying two suitcases and a backpack. Norwood and his associate left approximately 12 minutes later with the same bags. Norwood and the associate then traveled to the stash apartment, where Norwood entered with two suitcases. On March 10, 2020, after Room 221 was cleared of guests, investigators searched the room for evidence. An inspection of the room turned up ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (b) an airline ticket in MILLIKEN's name; and (c) a luggage tag that matched the barcode on MILLIKEN's airline ticket.

17. On March 21, 2020, the associate who accompanied Norwood to Hotel A during MILLIKEN's March 9 trip booked Room 203 at Hotel A. That evening, the covert camera aimed at the stash apartment captured Norwood and Mamea entering the apartment with two suitcases and two backpacks. Norwood's associate, who booked the hotel room, entered the apartment approximately two minutes later. A couple of hours later, Norwood, Mamea, and Norwood's associate all departed, with Mamea wheeling two suitcases. Not long thereafter, Mamea arrived at Hotel A, where he took the elevator to the second floor, the same floor at Room 203, wheeling the same bags he left the stash apartment with.

18. As noted above, on July 13, 2020, Mamea traveled from San Francisco to Dulles airport near Washington, D.C. After Mamea and Norwood entered the Grand Central Apartment, law enforcement executed a search and seizure warrant at the apartment, where they found Norwood and Mamea, a large quantity of narcotics, a firearm, and over $360,000 cash.

19. On July 14, 2020, law enforcement executed a search warrant at a storage locker maintained by Norwood. In the storage locker, law enforcement recovered approximately $1,759,618 cash and two additional firearms.

20. Following Norwood's arrest, law enforcement obtained warrants to search his electronic devices. In the "Notes" section of one of those devices, Norwood maintained what investigators believe to be drug ledgers. The ledgers indicate that a "whole" is "32k." I know, based on my training, knowledge, and experience, that the wholesale value of a kilogram of cocaine is approximately $32,000, depending on the market at the time.

21. 



### Norwood and Mamea's Indictment

22. On April 28, 2021, a Grand Jury for the District of Maryland returned an indictment charging Norwood and Mamea with conspiring to distribute and possessing with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine. *See* Crim. No. SAG-21-0131, ECF 1 (D. Md.). The indictment also charges Norwood with possessing with intent to distribute 400 grams or more of fentanyl, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon. *Id.*

### The Proposed Criminal Charges

23. Based on the facts stated herein and my training, knowledge, and experience, I believe that, beginning on or about November 6, 2019 and continuing through July 13, 2020, MILLIKEN conspired with Norwood, Mamea, and others known and unknown to distribute and possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine. Specifically, I believe that MILLIKEN operated as a drug courier who brought large quantities of cocaine into the State of Maryland from other states, which he then distributed to Norwood, who he knew would further distribute the substances.

24. As such, I respectfully request that the Court issue the requested Criminal Complaint and related arrest warrants.

*George C Vigue*
_____
Task Force Office George Vigue
U.S. Drug Enforcement Administration

Affidavit submitted by email and attested to me as true and accurate by telephone pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this __25__ day of June 2021.

_____
Hon. Thomas M. DiGirolamo
United States Magistrate Judge
District of Maryland